NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal Action No. 03-228 (FLW) |
| v. | : | **MEMORANDUM OPINION** |
| LEONARD PAULK | : | |

      This matter comes before the Court upon the motion by Defendant Leonard Paulk ("Paulk"), seeking a judgment of acquittal under Fed.R.Crim.P. 29(c) on Counts 1 and 3 of the Second Superseding Indictment (the "Indictment") which charged Paulk with a conspiracy to distribute cocaine, heroin and crack cocaine in violation of 21 U.S.C. § 846 and the distribution of crack cocaine in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 2. Alternatively, Paulk seeks a new trial pursuant to Fed.R.Crim.P. 33. The Court has reviewed the parties' submissions, and for the reasons stated below, Paulk's motion for a judgment of acquittal, or in the alternative, for a new trial, is denied.

**I.      BACKGROUND**

      This case arises out of the federal investigation of the "Tuten Organization," which the Government alleged consisted of drug traffickers involved in the distribution of heroin, crack cocaine

and cocaine in the Camden, New Jersey area from approximately October 2000 to March 2003. According to the Government, Paulk, among other named individuals, supplied various narcotics to the Tuten Organization.[1]  The Government further claimed that the Tuten Organization controlled and directed the street-level drug distribution at certain locations in Camden, New Jersey, known as drug sets, including the areas of 9th and Elm Streets, 8th and Spruce Streets, Broadway and Stevens Streets, and Line and St. John Streets.

On November 30, 2004, a jury found Paulk guilty of one count of narcotics distribution conspiracy, a violation of 21 U.S.C. § 846 ("Count 1"), and one count of distribution of crack cocaine, or cocaine base, a violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 2 ("Count 3").  With respect to Count 1, the jury determined that the conspiracy involved 50 grams or more of cocaine base.  The jury did not return a verdict on the other types of controlled substances (heroin and cocaine) alleged to have been distributed by the members of the conspiracy.  With respect to Count 3, the jury found that Paulk distributed 115.4 grams of cocaine base on or about March 26, 2002. The jury acquitted Paulk on Count 4 of the Indictment, a second drug distribution count, and was unable to reach verdicts on Counts 9-12 of the Indictment, which were the money laundering charges. The same jury acquitted co-defendant Lorenzo "FuQuan" Hardwick of all counts in the Indictment, including Count 1.  The jury was unable to reach a verdict with regard to co-defendants Martin "Rahmeen" Johnson ("Johnson") and Stanley "Mujahee" Crump, both of whom were only charged with Count 1 of the Indictment.

---

[1] In addition to Paulk, the Government charged 13 other individuals in the conspiracy to distribute narcotics.  Those individuals included Darnell Tuten, Alexander Pellot, Lorenzo Hardwick, Jermaine Waite, Jeffrey Howell, Lamont Powell, Gregory Brown, Mark Lee, Stanley Crump, Michael Moore, Tyrone Judge, Floyd Hohney and Martin Johnson.  With the exception of Paulk, Lorenzo Harwick, Stanley Crump and Martin Johnson (the "Defendants"), all of these individuals plead guilty and many of them testified against the Defendants at trial under cooperating plea agreements with the Government.

At the end of the Government's case-in-chief, Paulk moved for a judgment of acquittal under Fed.R.Crim.P. 29 ("Rule 29"). The Court at that time heard the arguments from counsel and reserved decision pursuant to Fed.R.Crim.P. 29(b). At the close of all the evidence in the trial, Paulk renewed his Rule 29 motion and the Court again reserved its decision. Paulk now moves for a judgment of acquittal pursuant to Fed.R.Crim.P. 29(c), or in the alternative, for a new trial pursuant to Fed.R.Crim.P. 33 ("Rule 33"), alleging that with respect to Count 1, the Government failed to prove the existence of a single conspiracy, and that with respect to Count 3, there was insufficient evidence establishing him as a culpable participant in the March 26, 2002 sale of crack cocaine between Tuten and the Government's informant, Jose "Joey" Perez ("Perez"). Paulk also argues that he is entitled to a new trial because "the Court cannot determine whether [Paulk's] conviction on the conspiracy charge was based upon his involvement in the March 26, 2002 transaction or some other drug transaction." Def. Br. at 2.

For the reasons set forth below, the Court finds, after examining the evidence in the light most favorable to the Government, that the Government has presented sufficient evidence from which a reasonable jury could conclude that all of the elements of the crimes charged in Counts 1 and 3 of the Indictment have been proved beyond a reasonable doubt.

## II.  DISCUSSION

### A.  Standard for a judgment of acquittal

Pursuant to Fed.R.Crim.P. 29, a court may reserve decision on a motion for judgment of acquittal made at the close of the government's case, as well as at the close of all the evidence. Fed.R.Crim.P. 29(b). If the court reserves its decision, it must decide a Rule 29 motion on the basis

3

of the evidence at the time the ruling was reserved. Id.; see United States v. Brodie, 403 F.3d 123, 133 (3d Cir.2005). Therefore, in this matter, the Court must decide Paulk's Rule 29 motion based on the evidence at the end of the Government's case-in-chief, including evidence elicited on cross-examination of the Government witnesses, but not evidence presented in the defense case. See Brodie, 403 F.3d at 134 (citations omitted). Furthermore, in reviewing a Rule 29 motion, the Court must "review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." United States v. Wolfe, 245 F.3d 257, 261 (3d Cir.2001). The Court is obligated to "'draw all reasonable inferences in favor of the jury's verdict.'" United States v. Smith, 294 F.3d 473, 476 (3d Cir.2002) (quoting United States v. Anderskow, 88 F.3d 245, 251 (3d Cir.1996)). When examining the sufficiency of the evidence, the Court reviews the totality of the circumstances. United States v. Leon, 739 F.2d 885, 891 (3d Cir.1984) (citations omitted). That is, the Court must examine all of the evidence presented by the Government taken as a whole, and not consider pieces of the evidence in isolation. United States v. Picciotti, 40 F.Supp.2d 242, 245 (3d Cir.1999) (citations omitted). However, the Court may not grant a judgment of acquittal based upon credibility determinations for "'it is up to the jury to weigh conflicting testimony, determine credibility, and ultimately draw factual inferences.'" United States v. Carmichael, 269 F.Supp.2d 588, 595 (quoting United States v. Scarfo, 711 F.Supp. 1315, 1334 (E.D.Pa. 1989)); see Brodie, 403 F.3d at 133 (citations omitted) (stating that "[c]ourts must be ever vigilant in the context of Fed.R.Crim.P. 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury."). Therefore, a finding of insufficiency should "'be confined to cases where the prosecution's failure is clear.'" Smith, 294 F.3d at 476 (quoting Leon,

739 F.2d at 891). Despite this standard of review, a defendant challenging the sufficiency of the evidence bears a heavy burden. See United States v. Coyle, 63 F.3d 1239, 1243 (3d Cir.1995); United States v. Casper, 956 F.2d 416, 421 (3d Cir.1992) (citation omitted). A defendant must overcome the jury's special province in evaluating witness credibility and conflicting testimony. See Carmichael, 269 F.Supp.2d at 594-95 (citations omitted).

**B.     Sufficiency of the evidence**

To prove a conspiracy, the Government must establish a unity of purpose between the alleged conspirators, an intent to achieve a common goal, and an agreement to work together toward that goal. United States v. Gibbs, 190 F.3d 188, 197 (3d Cir.1999) (citing United States v. Robinson, 167 F.3d 824, 829 (3d Cir.1999)). The Government may prove these elements entirely by circumstantial evidence. Smith, 294 F.3d at 477 (citations omitted). Moreover, the Government "need not prove that each defendant knew all of the conspiracy's details, goals or other participants." Id. (citations omitted). The Third Circuit and the United States Supreme Court's jurisprudence regarding conspiracies is consistent: in order to sustain a conspiracy conviction, the "contention that the evidence also permits a less sinister conclusion is immaterial. To sustain the jury's verdict, the evidence does not need to be inconsistent with every conclusion save that of guilt." United States v. Dent, 149 F.3d 180, 188 (3d Cir.1988) (citation and internal quotation marks omitted); see also Holland v. United States, 348 U.S. 121, 139 (1955); Brodie, 403 F.3d at 134 (quoting United States v. United States Gypsum Co., 600 F.2d 414, 417 (3d Cir.1979) ("[T]he character and effect of a conspiracy [is] not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole.") (internal quotations and citation omitted). Finally, in the Third Circuit,

5

it is neither a constitutional requirement nor an element of 21 U.S.C. § 846 that a defendant have committed an overt act in furtherance of the conspiracy. Gibbs, 190 F.3d at 197 n. 2 (citing United States v. Shabani, 513 U.S. 10, 11 (1994)).

     Here, Paulk claims that the evidence presented by the Government was legally insufficient to sustain his conviction on Count 1, the substantive conspiracy charge, because the Government failed to prove the existence of a single conspiracy. According to Paulk, the jury's finding that he was responsible for only the distribution of more than 50 grams of crack cocaine on the substantive conspiracy charge demonstrates that the jury limited him to a conspiracy solely with Tuten, not the other individuals alleged to have been involved in drug trafficking activities. Paulk also contends that the Government failed to show that he was a culpable participant in the March 26, 2002 drug transaction between Perez and Tuten. With respect to that transaction, Paulk claims that he merely "vouched" for Tuten to Perez and that such "vouching" cannot support a finding that he aided and abetted Tuten's sale of crack cocaine to Perez. According to Paulk, the lack of evidence supporting his involvement in the March 26, 2002 drug transaction means not only that his conviction on Count 3 cannot stand, but also that he did not commit an overt act in furtherance of the conspiracy. Paulk thus contends that the evidence only establishes the existence of multiple, but separate conspiracies between various drug dealers in the Camden area during the relevant time period charged in the Indictment.

     However, contrary to Paulk's claims, the record in this case contains overwhelming evidence presented during the Government's case of Paulk's participation in a single drug conspiracy. During its case-in-chief, the Government presented testimonial and documentary evidence that set forth a series of drug dealing and drug-related activities that involved Paulk and the other members of the

conspiracy. With respect to Paulk's activities with Tuten, the evidence consisted of, among other things, Perez's consensually recorded conversations and telephone calls with Paulk from December 6, 2001 to July 18, 2002. Perez testified that as early as December 2001, Paulk introduced him to Tuten as a source of narcotics. See 9/29/04 Tr. at 81-86. At trial, the jury heard the recorded conversation where Paulk repeatedly stated that Tuten is "on the diva [heroin] thing" and that Paulk "know[s] him for good." Id. at 82. Perez testified that Paulk "[kept] on telling [him], back and forth, [that Tuten] is good and for [him] to hook up with [Tuten]." Id. at 85-86. Perez further testified that Paulk vouched for Tuten and "set it up." Id. at 98. Indeed, in that same conversation, Paulk states that he "wouldn't send nobody bad" to Perez. Id. at 99. At trial, Perez also described various encounters with Tuten involving the sale of drugs and Paulk's connection to such sales. For instance, Perez testified about a chance encounter with Tuten in late February 2002 where Tuten acknowledged that Paulk had talked to him about Perez and suggested that he and Perez "should hook up." Id. at 137. According to Perez's testimony, Perez purchased 115.6 grams of crack cocaine from Tuten on March 26, 2002. See 9/30/04 Tr. 57-59. Perez also testified about a conversation with Paulk which took place just three days after Perez's drug transaction with Tuten. See id. 60-63. Perez stated that in that conversation, Paulk indicated he would not "turn [Perez] on to nobody else that's not right ...." Id. at 62.

      The Government also presented evidence of Paulk's involvement in various drug activities between Tuten, Johnson and Mark Lee ("Lee") during the conspiracy period. First, there was evidence of the nature and extent of Paulk's drug relationship with Johnson during this period. Perez testified that Paulk attempted to set him up with an individual named "RahRah" (otherwise known as Johnson, see 9/27/04 Tr. at 93) for a supply of drugs. See 9/30/04 Tr. at 32. According to the

7

testimonial and documentary evidence at trial, Johnson ran the drug set at Line and St. John Streets in Camden. See 10/06/04 Tr. at 33-35, 40, 45. William Davis ("Big Will," see id. at 4), a drug dealer in Camden who has known Johnson his whole life, see id. at 23, testified that between October 2000 and October 2003, he supplied Johnson several times with cooked cocaine. See id. at 47-49. Big Will also testified that during that time period, he saw Paulk at the Line and St. John Streets drug set twice a week. See id. at 42. Furthermore, Eric Webb and Lamont Powell ("Powell"), both drug dealers in the Camden area, also testified about the drug activities of Paulk and Johnson. According to Webb and Powell, around May 2001, Paulk and Johnson were involved in an altercation with Powell over Powell's alleged encroachment onto Johnson's drug set. See 10/07/04 Tr. at 105-115; see also 10/12/04 Tr. at 184.

The Government's evidence also included the testimony of Lee, a drug dealer from the Camden area, who ran a drug set on 9th and Elm Streets. See 9/23/04 Tr. at 100. According to Lee, in early 2002, he and Paulk discussed the possibility of a supply relationship in cocaine. See id. at 19. Lee testified that soon after this meeting with Paulk, Johnson approached him with an offer to sell him cocaine. See id. at 22-25. Lee admitted that he and Johnson engaged in "many deals," id. at 28, and described in detail how they would arrange to meet each other to do their business. See id. at 33. Furthermore, Lee testified that in a later encounter with Paulk, Paulk inquired whether Lee met with Johnson (whom Paulk referred to as "family") and also asked about the color of the cocaine that Lee received from Johnson. See id. at 25-26. Lee testified that although Paulk told him not to do business with Tuten, see id. at 29, Lee started buying narcotics from Tuten around that same time. See id. at 95-96. Tuten also testified that Johnson brought Lee to him in order to acquire drugs. See 10/19/04 Tr. at 95. According to Lee, Tuten and Johnson disagreed over which one of them was

8

entitled to supply Lee with drugs. See 9/23/04 Tr. at 95-96. Lee's trial testimony included a description of a conversation he had with Tuten where Tuten complained about the "street tax" he had to pay every time he bought drugs from Johnson. See id. at 92; see also 10/19/04 Tr. at 97. Big Will also testified that Johnson had disagreements with Tuten over the quality of cocaine in Tuten's supply. See 10/06/04 Tr. at 46-47.

Hasani Davis ("Davis"), Paulk's cousin, also testified about Paulk's drug activities during the conspiracy period. Specifically, Davis testified that from approximately the middle of 2000 to the beginning of 2001, Paulk directly supplied him with drugs to sell at Davis' 8th and Line Streets drug set in Camden. See 10/14/04 Tr. at 6-17. Furthermore, Kevin Bradshaw ("Bradshaw"), testified that around 2001, he obtained kilograms of cocaine from Nick Perry ("Perry") at the specific direction of Paulk. See 10/12/04 Tr. at 37-38. According to Bradshaw, Paulk told Perry "[t]he amount [of cocaine] and where and when to go get it." Id. at 38. Bradshaw also stated that Perry went to Paulk's Maple Shade apartment "countless" times to pick up drugs. Id. at 42-43; see also 10/14/04 Tr. at 28-30 (Davis testifying Paulk supplied him with "a substantial amount of coke" from the Maple Shade apartment).

The Court finds that the trial testimony of these witnesses and the documentary evidence presented by the Government set forth a sufficient basis of linking Paulk to a conspiratorial network of narcotics distribution during the time period charged in the Indictment. In a Rule 29 motion, this Court cannot weigh the evidence or determine the credibility of the witnesses. It is entirely within the jury's discretion to determine those issues, draw the factual inferences, and resolve any inconsistencies or discrepancies in a witness's testimony in favor of the Government. On the basis of the evidence at the close of the Government's case-in-chief regarding Paulk's involvement in the

March 26, 2002 transaction and his drug relationships with various drug dealers in the Camden area, the Court finds, after viewing all of the Government's evidence in the totality of the circumstances and in the light most favorable to the Government, that there were sufficient facts presented to the jury that could have lead a rational trier of fact to find beyond a reasonable doubt that Paulk had participated, and was involved in, the drug conspiracy alleged in Count 1 of the Indictment and that Paulk was a culpable participant in the March 26, 2002 drug sale between Perez and Tuten. Whatever the jury's reasoning may have been with respect to crediting or discrediting the witnesses' testimony on these matters, this Court cannot conclude, based on the evidence presented at trial, that no reasonable jury would have arrived at a guilty verdict on Counts 1 and 3 beyond a reasonable doubt.

### C.     Paulk's motion for a new trial

Paulk argues that he is entitled to a new trial because the "Court cannot determine whether ... Paulk's conviction on the conspiracy charge was based upon his involvement in the March 26, 2002 transaction or some other drug transaction." Def. Br. at 2. In a Fed.R.Crim.P. 33 motion for a new trial based on the "weight of the evidence," a court can order a new trial only if it "believes that there is a serious danger that a miscarriage of justice has occurred - that is, that an innocent person has been convicted." United States v. Johnson, 302 F.3d 139, 150 (3d Cir.2002) (internal quotations and citations omitted). Unlike a Rule 29 motion, the court does not view the evidence favorably to the government in a Rule 33 motion, "but instead exercises its own judgment in assessing the government's case." Id. (citations omitted). The Third Circuit, however, has stated that Rule 33 motions are not favored and "are to be granted sparingly and only in exceptional cases."

Government of Virgin Islands v. Derricks, 810 F.2d 50, 55 (3d Cir.1987) (citations omitted).

Here, the Court cannot find that such a miscarriage of justice occurred with respect to Paulk's convictions. As discussed above, there was ample evidence with which to establish a foundation for the jury verdicts on Counts 1 and 3. The witnesses' testimony as well as the other evidence, including the recorded conversations and phone calls between Paulk and the other members in the conspiracy established Paulk's extensive involvement in drug trafficking activities during the time period charged in the Indictment. Therefore, contrary to Paulk's claims, the evidence at trial demonstrates that Paulk's involvement in the conspiracy to distribute narcotics was not just limited to the March 26, 2002 drug transaction between Perez and Tuten.

### III.    CONCLUSION

For the foregoing reasons, Paulk's motion for a judgment of acquittal under Fed.R.Crim.P. 29 on Counts 1 and 3 of the Indictment, or in the alternative, for a new trial pursuant to Fed.R.Crim.P. 33, is hereby denied. The Court will issue an appropriate Order.

/s/ Freda L. Wolfson
Honorable Freda L. Wolfson
United States District Judge

Date: June 27, 2005